The next case scheduled for oral argument this morning is 23-2140, Brooks v. City of Good morning, Mr. Sokin. Can you hear me okay? I can, Your Honor. Okay, thank you. We are just waiting for other counsel to appear remotely. Ms. Galassi, so just hold on one moment, please. Ms. Galassi, I don't know if you can hear me. We cannot see you. Are you there, Ms. Galassi? Okay, now we can see you. Can you hear me okay, Ms. Galassi? You're on mute. Okay, finally. Okay, good. Good morning. Good morning. Whenever you are ready, Ms. Galassi, we'll proceed with you first. Thank you. May it please the Court and Counsel, I'd like to start with count four, which is Simmons Title VII retaliation claim. The trial court found that Simmons' termination and Burris' discipline for essentially the same conduct would normally be an issue to go before the jury. The jury found that this taping and recording became a superseding cause, rather than allowing the jury to see whether or not the conduct was, in fact, worse or, in fact, whether these were two comparables with regard to their conduct. The releasing was a little unusual because Simmons was never charged with releasing the tape, so I'm not sure if you haven't been charged with that offense, then it cannot be a superseding cause. Do you think that, do you, hold on, let me ask you a question. Do you seriously think that that's the test for an intervening cause? That in order it to be an intervening cause in an employment discrimination, the employee has to engage in illegal conduct and actually be charged with a crime. Short of that, it's not an intervening cause. What he did, okay, I mean, think about, okay, in this case he gave it to a plaintiff. What about tipping off a drug dealer or a criminal defendant? Recording a police briefing and bringing it to a criminal defendant or somebody under investigation and saying, hey, I want to tip you off, and in intervening cause in a disciplinary action, the police officer would have to be charged with a crime. That can't possibly be the law. I mean, do you have any support for that whatsoever? I think my support would be not so much if he was charged as in some type of official charge. What I'm saying to you is that the city didn't see fit to seek his termination for this releasing. I mean, if it wasn't important enough to them to seek termination for it, then I don't understand how it can be an intervening cause. And I understand what you're saying, but I'm going to the state of mind of the actors who were seeking his termination. The other part of Simmons' retaliation claim that I think was is all of the events that occurred prior to the termination or even before the recording issue came up. Simmons was unlawfully suspended in July of 2017, and he was suspended for behavior that Baxter determined was petty, and he was suspended without pay for supposedly lying during an internal investigation. And two points there. First, the chief could only suspend for up to five days. After that, the requirement was that the police commission would have to enter an hearing. So, but we are looking at this man was on suspension for eight months, and that should not have flowed. The conduct was deemed petty, and initially it was not even, you know, going to be the subject of discipline other than what Brooks was initially told, go find out what Simmons says and then counsel him and put it in the guardian tracking. So, somehow it morphed into, I guess it snowballed into now a fireable offense. As for the lying during the internal, Simmons was asked when he was interrogated, and it was on a second notice of interrogation, and he was asked, did you talk to anybody about this? He had not. He had admitted he talked to Brooks about the first one, but he had talked to no one about the second. But I want to come back to Judge Kirsch's question, Ms. Glossy. How do you get around the fact that he was fired because of an intervening cause here, that he recorded a discussion during a police meeting that nobody knew he was recording, and then he turned that over to plaintiff's counsel who was suing the city? How do you get, even if everything you have said is true, how do you get around that intervening cause, a clear violation of the public, of express policy of the city? Well, I guess, you know, I have given what I perceive is my best explanation for it, but I guess I would go back to the point that even if you would find that, you know, the events come February of 2018 were an intervening cause, that doesn't mean you should not have addressed the discrimination that occurred in the eight months prior when the gentleman had no income and was suspended without pay. His, you know, credentials were confiscated, and in fact, you know, because it was, you know, over what the chief could order, the suspension was more than what the Commission could order, you know. In essence, I would say that it was almost a de facto termination at that point. Ms. Galassi, if I could ask a question with regard to taking a step back. Count 4 is a Title 7 retaliation claim, is that correct? Correct. And so you have to first establish that Officer Simmons had engaged in some sort of activity that's protected by Title 7, right? Correct. And so what is your best evidence that he engaged in protective activity under Title 7? It would be that he had a reasonable belief that he was being sexually harassed by Burris. And I believe, as we correctly cited, that as long as you have a sincere belief that there is a Title 7 violation... And so your argument is that Officer Simmons thought that Officer Burris was making comments, the two comments that he made to him, because Officer Simmons was male? Correct. And that's the only reason that Officer Burris, or that was the motivating cause for Officer Burris to make that comment to Officer Simmons? Correct. I think the issue is that, you know, I'll freely admit that, you know, under the sexual harassment standards, that, you know, the two comments would likely never rise to be severe and or pervasive. But the issue is is whether or not Officer Simmons felt he was being discriminated against in violation of Title 7. And that does not kill a retaliation claim. And what is your evidence that, what is your evidence that it was objectively reasonable for Officer Simmons to believe that the reason Officer Burris made those as opposed just because, as opposed to the fact that they were just colleagues? Well, I guess I don't have an answer for that, other than, you know, he had a Counsel has talked about, and again, the, you know, even if you find that the taping and the releasing were an intervening cause or superseding cause, that I still believe that you need to address the adverse action he suffered in the eight months prior to the termination. I'd like to move on to the Brooks failure to accommodate. There were requests made prior to Brooks transfer to second shift and requests made afterwards. I think it's worth noting that the whole reason for the transfer to second shift was built on a lie. Brooks was told that because he conducted a biased investigation and Baxter was able to find a witness within an hour, that it was proof that he was biased against Melton and he had to be separated from her. But we know from Baxter's testimony that he said, no, John did exactly what I told him to do. He went and talked to Simmons and Richardson and I told him that was it. So he's transferred to a shift, which I would note that the trial court lessened the, I guess, the importance of the necessity for him to work first shift. Is there any, your client worked the second shift for about 10 years, is there any evidence that during that time he ever requested to work the first shift as an accommodation to his sleep apnea? Well, first of all, he had not worked second shift for over a year. No, because he could not, because he did not, there was a seniority system and under the ADA that is one accommodation that cannot take place and that is to interrupt a seniority system and it wasn't until Burris was demoted that he had top seniority in order to ask for an accommodation to another shift. And what's your best evidence that this requested accommodation was reasonable or necessary when your client's own doctor said he could do the job without any accommodation? I believe that notice was, or what his doctor had said was that he could do his job without accommodation while he was still on first shift. The October 13 note from the doctor dated that very day said, rather inartfully, that first shift was the only shift where he could maintain and function. So that would be the evidence that he needed an accommodation. Do you want to save the rest of your time for a rebuttal? Oh, thank you. Three minutes. About two minutes, it's an 11 seconds left, so we'll save that for a rebuttal. Mr. Stolfi? Thank you, Your Honor. May it please the court and counsel. If it pleases the court, I'll address these matters in the order that Ms. Galassi just did and start with count four. Ms. Galassi just said that what Mr. Simmons did was essentially the same conduct as what Lieutenant Burris did. And I think Judge Lee's question about why did he think this was similar is pertinent. What happened between Mr. Simmons and Lieutenant Burris was two heterosexual men, one of which made a joke about whether he was sleeping with a woman who came into the police station. I believe the first comment was in December of 2016, and then he made a second similar comment in early spring of 2017. Lieutenant Burris was punished for that first comment. He received a two-day suspension. The second comment, the city came down on Lieutenant Burris like a ton of bricks. He was demoted all the way from lieutenant to patrol. So the idea that the city was taking this lightly, the city took it to the extreme. And the issue here that Judge Shadid found is what happened after that? And counsel doesn't dispute this. What Mr. Simmons thought was sexual harassment in this circuit is not sexual harassment. It just isn't. And the issue is, well, maybe he thought it did. But let's look at all of the things that happened thereafter. The comment that was reported by Officer Melton occurred, that comment is not related to the Lieutenant Burris issue. That is sexual harassment because it was a male on a female co-worker. So that could fit the definition of sexual harassment. Whether it was pervasive or not, we never really got into that because it wasn't an issue. But she reported that comment, and that launched this several things occurred after that, that are purely on Mr. Simmons, that have nothing to do with Lieutenant Burris. That he was given his garrity warning and he violated it by immediately contacting Brooks and talking to him about the investigation. When he was asked about if he spoke to anyone, and I know counsel disputes this, but if the court reads the transcripts, I think it's clear that he lied and he lied about violating his garrity warning because he denied speaking to anyone. And then he was specifically asked, did you speak to Brooks? And he denied that as well. And while all of this is happening, the city doesn't know that Simmons is secretly recording dozens of police meetings, dozens of them. And one interesting thing that has only come clear in hindsight is that Simmons attempted to blackmail the city with the recording that he eventually gave to the plaintiff's attorney. That he said, if the city doesn't do something about this, that he's going to take some other avenue. And now several years later, we know all the other avenue was he was going to give it to the plaintiff's attorney. And Judge Shadid was correct that what reasonable jury is going to think that secretly recording a police meeting in violation of established police policy was not an intervening cause. Why would they think that violating the garrity warning was not an intervening cause? Why would they think that lying about violating the garrity warning is not an intervening cause? They wouldn't. And this claim that we know that Simmons was fired over this is simply untrue because this court has held multiple times that you cannot just take for granted what a fire and the evidence was put on. The Fire and Police Commission is a due process hearing. It is established by Illinois state law and they decided he had to be terminated. That was the right decision. The city didn't know if he was going to be terminated. Perhaps if he hadn't done the recording or it hadn't been uncovered, maybe he wouldn't have been terminated. We don't know that. But all of those things in the interim are intervening causes having nothing to do with a year prior when he reported Lt. Burris for what I think is a very minor comment that the city really punished him for. The city demoted him. They did choose to give him that last chance agreement. But I don't think we can say that these are similar conduct between the two. I don't think there's any way for this Title VII complaint to stand because of the intervening causes and because the conduct is just not similar. Moving on to Lt. Brooks and the failure to accommodate claim. The timeline here is somewhat important because when you go back and look at the requests that Lt. Brooks made, it was difficult for the city to even know what he was asking for because the first time when he had to be separated from supervising Jennifer Melton, there was a history in the department of making those decisions. Lt. Burris got moved to a different shift in order to not have him supervise Mr. Simmons when he made those comments. So fast forward a few months later when this issue comes up where Jennifer Melton says Greg Simmons and Lt. Brooks will retaliate against me. I'm afraid he's going to do something. The city reasonably said we have to separate them. And that was when the accommodation request began. But the problem is what he first requested was not an accommodation. What he said was I want my seniority to apply. And the city's HR manager met with Mr. Simmons. They exchanged several emails. There were discussions about this and they said you're not requesting an accommodation. And Mr. Brooks flat out says in the documents that it would be unfair for him to request an accommodation. So he was asking for a seniority for several months in the summer of 2017 until we get to around I believe September of 2017 when he first says okay I need an ADA accommodation for my sleep apnea. The city then has a meeting that's transcribed in the record with the city's labor attorney and Mr. Brooks's counsel and Mr. Brooks where they discussed in depth a number of accommodations they were willing to offer him. Several of which I think this court would find unreasonable if it ever came down to that. The city offered to let him go home during his shift and take a nap. I don't believe there's any decision in this circuit that would ever hold that would be in a reasonable accommodation if requested. But what ended up happening was at the end of the meeting Mr. Brooks and the city and Mr. Brooks counsel agreed he was going to go on vacation in two weeks. They would take those two weeks they would see what accommodations worked. He would then meet with his doctor and then they would reconvene and then they would talk about which of the accommodations worked which ones didn't how they were going to handle this. But what happened was on October 26th another lieutenant reported Mr. Brooks's conduct to Deputy Chief Baxter in an email and said Lieutenant Brooks is putting pressure on patrolmen to support him in his dispute with the city. That was on October 26th. The city then shortly thereafter I believe it was on a weekend or the end of the day so I believe it didn't happen until the 30th where they said launch the formal investigation and interview these patrolmen. But it wasn't until October 27th the next day that the city received a copy of the EEOC and IDHR complaint that Lieutenant Brooks had filed. The city had no knowledge that he was making these complaints. They had been going through the interactive process with Lieutenant Brooks. They had no idea he made the EEOC complaint and this intervening report by Lieutenant Little of the city needs to investigate what Lieutenant Brooks is saying to his subordinates and that is what happened during the time that Lieutenant Brooks was on vacation. I know there's a dispute of something that was incorrect in Judge Shadid's order which is the timing of the vacation. So what we we do not agree despite what's put in the plaintiff's that there wasn't enough time to try these accommodations. We don't agree with that. We do agree that Judge Shadid had the order of the vacation and the time off work flip-flopped but it doesn't really matter. The agreement was we're going to try these accommodations but we then had just like Lieutenant Simmons or excuse me Patrolman Simmons this intervening event of he's putting pressure on all of these subordinates we need to figure out what is going on. They from vacation they put him on a suspension because of this investigation that's ongoing. Could I ask you a question about the timing so and this is apropos of the retaliation claim. So the notificate city receives notification from the Illinois Department of Human Rights with regard to Officer Brooks complaint on October 27th 2017. There's something in the about the time that that notice was received or whether the I'm sorry the time that the investigation was ordered that morning but there's no record site. Do you know the source of the district court's finding with regard to when the investigation was ordered on October 27th? I believe the investigation was was ordered on October 30th. I believe it's document 172-55. It's discussed on page 12 of my brief. I don't remember off the top of my head but I believe Lieutenant Little's email came the same day that Lieutenant Brooks started his investigation. Lieutenant Little's email was something something like 9 30 at night on the 27th or the excuse me on the 26th. The EEOC email the EEOC letter is received by the city on the 27th and then the investigation was formally launched by Chief Dossie on the 30th. So there's a three or four day window where that all happened but the the conduct was reported before they received the EEOC letter. Judge Shadid does mention in his order that conceivably that that could look like there's some timing issue there to to make an issue of it but when you look at it from the whole picture they they Lieutenant Brooks was not under investigation for anything. They were they had only separated him from supervising Melton because of her claims and her fears of retaliation and and the city said they were doing that not only to protect Jennifer Melton but to protect Lieutenant Brooks from any scrutiny if he were to supervise. What they were going through was the accommodation plan when all of a sudden this this investigation has to happen about hey he's pressuring all these subordinates telling them he's got a lawsuit telling them that the city staff they're all liars that Chief Dossie's a liar that Sarah Newcomb the HR director she is a liar and Lieutenant Little was very concerned about the pressure that was being put on these subordinates. The city learned about that while the interactive process was ongoing and I think if we're going to say you know that and the court has said in the past that an ADA claim isn't to be used by a plaintiff as if it was some shield for bad employment conduct and the fact that this just happened to arise while the interactive process was ongoing is really of no consequence. The timing may look the entire picture the city learned of Mr. Brooks's conduct while they were still going through the process of how are we going to accommodate this claim. Counselor, I think I misspoke a little bit when I asked you that question. There's the district court in the opinion states that Dossie emailed his assistant at 8 55 a.m on the 27th to ask her to begin to put together the paperwork for formal investigation. So at 8 55 a.m on the 27th Dossie is asking is kind of putting the wheels in the process to begin the investigation but unfortunately the district court gives no record citation and we have been able to unable to find where in the record that might be. Do you have any suggestions on where we might look? You know off the top of my head I do not. If the court would like I'd be happy to look and submit a letter to the court that could clarify that. I would think it would be somewhere around if we did a good enough job of ordering our exhibits somewhere around exhibit 54, 55, 53 somewhere around there those are all the exhibits regarding the lieutenant little email. It may be in a deposition but I'd be happy to look through and find that reference for the court if the court would like that. Thank you. The other two claims with my last 45 seconds the disparate treatment claim lieutenant Brooks would have to prove that he was disciplined and discharged because of his disability. Judge Shad had found that he wasn't discharged because he did not attend the fire and police commission. That he retired in the face of that and this court held in Polka that you can't just ignore those hearings and retire in the face of them and then claim constructive discharge. And that would be the same defense to the count three ADA retaliation claim that that there really was no retaliation. He decided to retire in the midst of this investigation and pursuant to Polka that can't be considered a constructive discharge. Thank you. Thank you Mr. Sokin. Ms. Galassi, rebuttal please. Thank you. Thank you. I'll kind of work backwards from counsel's argument. First of all on the constructive discharge the commission couldn't do anything about his shift assignment. You know we have he had Brooks had an extensive history when he was on seconds over a decade before of falling asleep at the wheel and hitting cars. In 2016 while he was still on thirds he made several announcements that he was going to retire because he couldn't hack third shift. So if he's being assigned to a shift that he cannot physically work then to me that is that meets the standard of a constructive discharge. The meeting that Brooks had with the HR director in July the record is that what Brooks was saying was he was not asking for her to create a new position. And what seems to be continually glossed over is that you know Brooks made two requests on June 16. The first was denied in nine minutes. The June 12th meeting took place and the only thing that was discussed was adjusting times and the Brooks and Kaminsky both agreed that that would not work operationally. There was nothing else offered. Once the HR director said well I guess you're not asking for an accommodation that prompted my letter of August 1st to clarify exactly what Brooks was asking. Heard nothing. I followed up with the letter September 1. I heard nothing. Brooks again notified Baxter September 28th look I'm having trouble at work. I'm sleepy. I'm starting to fall asleep and that's what led to the October 13th. So it's it's my position that there was plenty of time to work on accommodation not just after October 13. Thank you Ms. Galassi. Thanks to both counsel. The court will take the case under advisement.